AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Virginia

MAY 16 2017

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

Information associated with Facebook vanity name "ORLY ORLANDO MOLINA," Facebook ID 666316709 that is stored at premises controlled by Facebook

Case No. 1:17-SW-258

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Information associated with Facebook vanity name "ORLY ORLANDO MOLINA," Facebook ID 666316709 that is stored at premises controlled by Facebook, as described in Attachment A (Property to be Searched).

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B (Particular Things to be Seized).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952(a), 960(a)(1), & 960(b)(2)(B) | Knowingly and intentionally importing into the United States from any place outside thereof 500 grams or more of cocaine. |

The application is based on these facts:
See attached affidavit.
THIS WARRANT IS SOUGHT PURSUANT TO 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A)

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

James Levine/Amy Wells-Morgan

Jay Call, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____May 16, 2017_____

/s/ _____
John F. Anderson
United States Magistrate Judge
*Judge's signature*

City and state: _____Alexandria, Virginia_____

Hon. John F. Anderson, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### ITEMS TO BE SEIZED AND SEARCHED

This warrant applies to information associated with the Facebook account associated with Facebook vanity name Orly Orlando Molina FERNANDEZ, Facebook ID 666316709 and that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### SPECIFIC ITEMS TO BE SEIZED AND PROCEDURES
### TO FACILITATE EXECUTION OF THE WARRANT

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, regardless of whether such information is stored, held, or maintained inside or outside the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID or account listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) All records or other information regarding the identification of the account, to include records of session times and durations, the IP address used to register the account, log-in IP addresses associated with session times and dates, methods of connecting, and log files;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitute fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 952(a), 960(a)(1) & 960(b)(2)(B) (knowingly and intentionally importing into the United States from any place outside thereof 500 grams or more of cocaine) involving Orlando Molina FERNANDEZ since April 1, 2016, including, for the Facebook user ID or account described in Attachment A, information pertaining to the following matters:

(a) Communications or evidence relating to the purchase, transport, importation into the United States, or sale of smuggled goods.

(b) Records relating to who created, used, or communicated with the user ID.

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime(s) under investigation and to the Facebook account owner;

(e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime(s) under investigation

(f) The identity of the person(s) who communicated with the user ID or account about matters relating to the purchase, transport, importation into the United States, or sale of smuggled goods, including records that help reveal their whereabouts.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MAY 1 6 2017

| | |
|---|---|
| IN THE MATTER OF A SEARCH OF ) | |
| INFORMATION ASSOCIATED WITH THE ) | Case No.1:17-SW-258 |
| FACEBOOK ACCOUNT ASSOCIATED WITH ) | |
| FACEBOOK VANITY NAME "ORLY ) | |
| ORLANDO MOLINA," FACEBOOK ) | |
| ID 666316709 THAT IS STORED AT PREMISES ) | |
| CONTROLLED BY FACEBOOK ) | |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, your affiant, Jay Call, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I have been a Special Agent with United States Department of Homeland Security

("DHS"), Immigration and Customs Enforcement ("ICE") Homeland Security Investigations

("HSI") since January of 2003.  I am currently assigned to the Washington Dulles International

Airport.  My duties as a Special Agent with HSI include, but are not limited to, the investigation

of federal laws governing the importation and exportation of controlled substances.  I have

received training in general law enforcement, including training in Title 21 of the United States

Code.  I am a graduate of the Federal Law Enforcement Training Center at Glynco, Georgia.  I

have received training in, and have personally investigated, matters concerning intellectual

property rights, narcotics trafficking, and money laundering resulting in the convictions of

numerous drug distributors and money launders and the seizure of significant quantities of

controlled substances and other evidence.

2.     I make this affidavit in support of an application for a search warrant for

information associated with the following account, listed in Attachment A -- Facebook account

associated with the Facebook vanity name ORLY ORLANDO MOLINA, Facebook ID 666316709 – which is stored at premises owned, maintained, controlled, or operated by the social networking company/electronic communications service provider Facebook Inc. ("Facebook") headquartered in Menlo Park, California.  I am requesting authority to search the social networking account where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer operating the web sites.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  All observations that were not made personally by me were related to me by the persons who made the observations.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  I have set forth only the necessary facts to establish probable cause to believe that evidence, fruits, and instrumentalities of the attempted and/or actual violations of Title 21, United States Code, Sections 952(a), 960(a)(1) & 960(b)(2)(B) (knowingly and intentionally importing into the United States from any place outside thereof 500 grams or more of cocaine), are presently located within the account listed in Attachment A.

## JURISDICTION

4.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i)

## PROBABLE CAUSE

5.     This investigation focuses on Orlando Molina FERNANDEZ, who has been charged in a criminal complaint with knowingly and intentionally importing into the United States from any place outside thereof a Schedule II controlled substance, namely, 500 grams or more of cocaine, in violation of Title 21, United States Code, Section 952(a).

6.     This investigation began on April 19, 2017, when Orlando Molina FERNANDEZ arrived at Dulles International Airport ("IAD") within the Eastern District of Virginia.  Orlando Molina FERNANDEZ arrived on Copa Airlines flight flight #304 from Panama City, Panama and originating from Viru Viru International Airport in Bolivia.

7.     FERNANDEZ, a Bolivian national approached United States Customs and Border Protection (CBP) Officer Langlois-Sparks at passport control and Primary Inspection and presented himself for inspection with his Bolivian passport #4732928.  Officer Langlois-Sparks referred FERNANDEZ to Secondary Inspection so that FERNANDEZ could verify the intent of his travel.

8.     FERNANDEZ arrived in Secondary Inspection and presented himself to CBP Officer Diogenes Agcaoili with four pieces of baggage.  CBP Officer Agcaoili initiated a conversation with FERNANDEZ in the Spanish language in the Secondary Inspection area and asked FERNANDEZ to place his bags on the inspection belt. CBP Officer Diogenes Agcaoili

asked FERNANDEZ if he owned the four pieces of luggage presented, and FERNANDEZ

claimed ownership of the luggage.  CBP Officer Agcaoili asked FERNANDEZ if he was bringing

into the United States items at the request of others and FERNANDEZ stated no.  FERNANDEZ

stated that the items he was transporting were for friends in the United States.

9.      CBP Officer Agcaoili began to examine FERNANDEZ's baggage.  Upon

inspection, CBP Officer Agcaoili observed multiple food items.  CBP Officer Agcaoili had some

of the items x-rayed to assist in determining the contents.  Approximately six (6) cans of fruit

were x-rayed and CBP could not determine the contents of the cans via x-ray.  CBP Officer

Agcaoili opened the cans and observed several pellets encased in plastic inside four (4) of the

cans.  CBP Officer Agcaoili immediately detained FERNANDEZ, took the subject to the

detention area for a pat down and placed FERNANDEZ in holding cell.

10.      CBP Officer Agcaoili examined the pellets and discovered the presence of a dry,

white and powdery substance.  A narcotics field test of the powder utilizing a Test Kit and the

powder tested positive for the presence or properties of cocaine.  The weight of the

contraband/narcotics was measured on a calibrated scale.  The weight of the pellets was

approximately 2.1 kilograms.

11.      CBP Officer Agcaoili also examined a bottle that appeared to contain alcohol.  An

x-ray of the bottle appeared to reveal a hollow cavity inside the bottle.  The bottle was then

broken and dry, white powdery substance was revealed to occupy the space between the hollow

cavity and the outside of the bottle.  A narcotics field test of the powder utilizing a Test Kit and

the substance tested positive for the presence or properties of cocaine.  The weight of the

contraband/narcotics was measured on a calibrated scale.  The weight of the contraband in the

alcohol bottle was approximately 1.6 kilograms.  The total weight of the contraband is approximately 3.7 kilograms.

12.     During a post-Miranda interview of Orlando Molina FERNANDEZ, conducted by your affiant, FERNANDEZ stated that he packed the four pieces of luggage himself and some people brought him items to transport to the United States, specifically the bottle of alcohol. FERNANDEZ stated he had received orders through Facebook communications and arranged through a Facebook chat group identified as "Cambas en USA" to transport food items, including the cocaine laden cans of fruit, to the United States for a fee.  FERNANDEZ stated he was paid approximately $6 per pound to transport the items to the United States.

13.     FERNANDEZ stated that met with individuals he connected with through Facebook, and that together they went to a market where he was instructed to purchase the fruit cans ultimately found to contain a substance that field tested positive for cocaine. FERNANDEZ stated that he was told what fruit to purchase, but that he personally chose the cans to be bought.

14.     FERNANDEZ stated that upon arrival in the United States, he was transport all ordered items to his brothers residence in Annandale, VA, from where arrangements would be made for pick up.

15.     On or about May 1, 2017, HSI Intel Research Specialist, Pamela Moldowan, conducted a Facebook search using the defendant's name, which revealed a Facebook page with the vanity name "ORLY ORLANDO MOLINA" displaying a profile picture of the defendant. The introduction comments on the "ORLY ORLANDO MOLINA" Facebook page state that the user is from and lives in Bolivia and is employed by the same company as the defendant.  Using the tool "find my Facebook ID," Intel Research Specialist Moldowan searched for the vanity

name "ORLY ORLANDO MOLINA," the result of which identified Facebook ID 666316709 as associated with that account.

16. Based upon my training and experience and on statements made by Orlando Molina FERNANDEZ, I believe that Orlando Molina FERNANDEZ, through Facebook ID 666316709, contacted and communicated with other individuals conspiring to smuggle narcotics into the United States.

17. Based on my training and experience, because of the international nature of the crime, individuals engaged in the unlawful smuggling or importation of goods into the United States use the Internet to coordinate the transportation, shipping, storage, and sale of narcotics. The international nature of their business, and the fact that the various participants are often scattered in different geographic locations, means the Internet is often the best and at times the only means of communication for such unlawful importation. Based on my training and experience, I have reason to believe that a search of the Facebook account associated with Orlando Molina FERNANDEZ will provide further evidence of the overall scheme, including additional and potential co-conspirators.

18. On May 8, 2017, a preservation request was sent to Facebook for Facebook ID 666316709 in order to ensure the information will still be accessible, even if Orlando Molina FERNANDEZ deletes the requested information associated with his account.

## TECHNICAL BACKGROUND

19. In you affiant's training and experience, your affiant has learned that Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and

users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

20.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

21.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

22.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

23.    Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

24.    Facebook allows users to upload photos and videos. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

25.    Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the

account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

26.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

27.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

28.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

29.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

30.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

31.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

32.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

33.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

34.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

35.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

36.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the

service (including any credit card or bank account number). In some cases, Facebook users may

communicate directly with Facebook about issues relating to their accounts, such as technical

problems, billing inquiries, or complaints from other users. Social networking providers like

Facebook typically retain records about such communications, including records of contacts

between the user and the provider's support services, as well as records of any actions taken by

the provider or user as a result of the communications.

37.     Therefore, the computers of Facebook are likely to contain all the material

described above, including stored electronic communications and information concerning

subscribers and their use of Facebook, such as account access information, transaction

information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

38.     I anticipate executing this warrant under the Electronic Communications Privacy

Act of 1986, as amended, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A),

by using the warrant to require Facebook to disclose to the government copies of the records and

other information (including the content of communications) particularly described in Section I of

Attachment B. Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

## CONCLUSION

39.     Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that Facebook, headquartered in Menlo Park, California,

maintains evidence of attempted or actual violations of Title 21, United States Code, Sections,

952(a), 960(a)(1) & 960(b)(2)(B) (knowingly and intentionally importing into the United States

from any place outside thereof 500 grams or more of cocaine). This evidence, listed in Attachment B to this affidavit, which is incorporated herein by reference, is also evidence of a crime and contraband or fruits of a crime.

40.     Therefore, your Affiant respectfully requests that the attached warrant be issued authorizing the search of the account listed in Attachment A, and the search and seizure of the items listed in Attachment B.

41.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Jay Call, Special Agent
U.S. Department of Homeland Security
Immigration and Customs Enforcement
Homeland Security Investigations

Subscribed and sworn to before me
on May 16, 2017.

_____ /s/ _____
John F. Anderson
United States Magistrate Judge
HONORABLE JOHN F. ANDERSON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### ITEMS TO BE SEIZED AND SEARCHED

This warrant applies to information associated with the Facebook account associated with Facebook vanity name Orly Orlando Molina FERNANDEZ, Facebook ID 666316709 and that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**SPECIFIC ITEMS TO BE SEIZED AND PROCEDURES
TO FACILITATE EXECUTION OF THE WARRANT**

I.    **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, regardless of whether such information is stored, held, or maintained inside or outside the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID or account listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) All records or other information regarding the identification of the account, to include records of session times and durations, the IP address used to register the account, log-in IP addresses associated with session times and dates, methods of connecting, and log files;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitute fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 952(a), 960(a)(1) & 960(b)(2)(B) (knowingly and intentionally importing into the United States from any place outside thereof 500 grams or more of cocaine) involving Orlando Molina FERNANDEZ since April 1, 2016, including, for the Facebook user ID or account described in Attachment A, information pertaining to the following matters:

(a) Communications or evidence relating to the purchase, transport, importation into the United States, or sale of smuggled goods.

(b) Records relating to who created, used, or communicated with the user ID.

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime(s) under investigation and to the Facebook account owner;

(e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime(s) under investigation

(f) The identity of the person(s) who communicated with the user ID or account about matters relating to the purchase, transport, importation into the United States, or sale of smuggled goods, including records that help reveal their whereabouts.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS
## PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United

States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration

is true and correct.  I am employed by Facebook, and my official title is _____.

I am a custodian of records for Facebook.  I state that each of the records attached hereto is the

original record or a true duplicate of the original record in the custody of Facebook, and that I am

the custodian of the attached records consisting of _____ (pages/CDs/kilobytes).  I further state

that:

       a.      all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

       b.      such records were kept in the ordinary course of a regularly conducted business

activity of Facebook; and

       c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules

of Evidence.


_____          _____

Date                                                      Signature